

F. Wilson Chockley, Jr., Michael T. McMenamin, Victoria L. Belfiglio, Walter Haverfield, Buescher & Chockley, Cleveland, Ohio, for plaintiff.

Malcolm C. Douglas, Asst. Director of Law, Cleveland, Ohio, for defendants.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before the Court is a motion to dismiss, or in the alternative for summary judgment, of defendants City of Cleveland, the City Council, George L. Forbes, and George V. Voinovich ("the City"), and WJW–TV's brief in opposition and in support of its own motion for summary judgment. The parties agree that there are no genuine issues of material fact and seek only the resolution of the legal issues raised by the three counts in WJW–TV's complaint. Because the Court is persuaded that WJW–TV was denied its first amendment right to attend a November 18, 1986 City Council meeting, it grants summary judgment in favor of WJW–TV and does not reach the pendent state claims contained in counts two and three of WJW–TV's complaint.

**WJW–TV, INC., Plaintiff,**

v.

**CITY OF CLEVELAND, et al., Defendants.**

Civ. A. No. C87–1524.

United States District Court,
N.D. Ohio, E.D.

March 30, 1988.

### I

There are no disputed issues of fact in this case. All parties agree that, on November 18, 1986, a pre-arranged meeting of City Council was held, at which twenty of the twenty-one Council members, Council President George Forbes, and Mayor George Voinovich, were present. Various issues of public interest to the city's residents were discussed. Several members of the news media, including reporters and cameramen from WJW–TV, had come expecting to be admitted, but were refused access. The City does not argue that the

matters discussed at the meeting were in any sense privileged or confidential, or that other compelling reasons existed for denying access to the media. No findings to this or similar effect were made on the record. Nor does the City deny the existence of a tradition of public access to Council meetings. Despite this, the City maintains that it was its prerogative to close the Council meeting to the public and to the press.

WJW–TV argues that this denial of access to the Council meeting violated rights secured by the first amendment to the United States Constitution, by Ohio Revised Code § 121.22 [Ohio's so-called "sunshine law"], which requires all meetings of any public body to be open to the public, and by the City's Charter, which contains a provision requiring Council meetings to be public. The City denies that its action violated any of these standards, and disputes this Court's jurisdiction to entertain the two pendent state law claims contained in counts two and three.

## II

Count one of WJW–TV's complaint concerns the first amendment to the United States Constitution and its application to the issue of public access to the legislative process. While a court ought, ordinarily, to avoid passing on a constitutional issue if a case can be disposed of without resort to it, such a decision is often appropriate and necessary. Where, as here, such an issue is unavoidably implicated by the facts of a case, or, also as here, there are independent reasons for not deciding what would otherwise be dispositive extraconstitutional questions, the constitutional issue is appropriately addressed. Because the Court finds that the City's act of closing the Council meeting violated WJW–TV's rights under the first amendment, it grants summary judgment in favor of WJW–TV without addressing the remaining issues.

There is nothing in the language of the first amendment itself from which a right of public access to legislative proceedings may automatically be inferred. There is, in addition, a conspicuous dearth of case law

bearing directly on the issue. Nonetheless, the existence of the right in question can be readily recognized once the rationale of analogous decisions is clearly understood.

Much of the applicable case law has concerned the public's, or the media's, access to judicial, and in particular criminal, proceedings. The landmark Supreme Court case of *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), upon which WJW–TV heavily relies, established that a criminal trial must, except under certain limited conditions, be open to the public. The *Richmond Newspapers* Court was called upon to decide if a trial court had acted properly when, without considering less restrictive alternatives, it granted defense counsel's motion to close the trial to the public. The Court held that the judge's action violated the first and fourteenth amendments. It explained:

> The First Amendment, in conjunction with the Fourteenth, prohibits government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." These expressly guaranteed freedoms share a common core purpose of assuring freedom of communication on matters relating to the functioning of government.

*Id.* at 575, 100 S.Ct. at 2826.

Passages such as this abound in the Court's opinion and make clear that *Richmond Newspapers* is a case about access not only to criminal trials, but equally to "matters relating to the functioning of government." Access to criminal trials is but a special case of a right to be informed about government which the Court held to be included in the first amendment.

The importance of *Richmond Newspapers*, as this Court understands the decision, lies both in its recognition of a public right of access to governmental proceedings, and in its restriction of the conditions under which that right may be circumscribed. *Richmond Newspapers* must be read as having recognized only a "qualified right," to be sure, but one which cannot be

qualified except for good cause. In the case of criminal trials, for example, the Court held that the public must be granted access "[a]bsent an overriding interest articulated in findings." *Id.* at 581, 100 S.Ct. at 2829.

That this is the best interpretation of the *Richmond Newspapers* opinion is evidenced by the elaborations to be found in its concurring opinions. Justice Stevens viewed the majority as having denounced "arbitrary" interferences with first amendment rights. He stated:

Today ... for the first time, the Court unequivocally holds that an arbitrary interference with access to important information is an abridgment of the freedoms of speech and of the press protected by the First Amendment.

*Id.* at 583, 100 S.Ct. at 2831. Justice Brennan recognized that such restrictions as have in the past been placed by the Court on the public's freedom of access to information were justified by the nature of the information:

Read with care and in context, our decisions must ... be understood as holding only that any privilege of access to governmental information is subject to a degree of restraint dictated by the nature of the information and countervailing interests in security or confidentiality.

*Id.* at 586, 100 S.Ct. at 2832. The privilege is also tempered by the context in which it is asserted: "An assertion of the prerogative to gather information must accordingly be assayed by considering the information sought and the opposing interests invaded." It is apparent as well from Brennan's concurrence that he understood the significance of the case to extend far beyond the matter of access to criminal trials. In characterizing what he termed the "structural" role played by the first amendment "in securing and fostering our republican form of government," Brennan indicated that freedom of communication in general is of chief concern:

Implicit in this structural role is not only "the principle that debate on public issues should be uninhibited, robust and wide-open," *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), but also the antecedent assumption that valuable public debate—as well as other civic behavior—must be informed. The structural model links the First Amendment to that process of communication necessary for a democracy to survive, and thus entails solicitude not only for communication itself, but also for the indispensable conditions of meaningful communication.

*Id.* at 588, 100 S.Ct. at 2833.

Subsequent Supreme Court decisions reinforce the conclusion that a first amendment right of access extends well beyond access to criminal trials. Although most of those decisions have dealt chiefly with press or public access to criminal trials in particular, a concern for access to information about government generally appears to have informed the decisions. This concern, indeed, is typically invoked as the major premise from which the right of access to criminal trials may be inferred. Thus in *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248, the Court justified its freedom-of-access conclusion by saying that "to the extent that the First Amendment embraces a right of access to criminal trials, it is to ensure that this constitutionally protected 'discussion of governmental affairs' is an informed one." *Id.* at 604–605, 102 S.Ct. at 2619.

The Court's enunciation of the notion of a "qualified first amendment right," and of the special circumstances in which alone the right may be defeated, is also rehearsed in later decisions. *Globe Newspapers* made clear that

the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

*Id.* at 606–607, 102 S.Ct. at 2620. Then, in *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 513, 104 S.Ct. 819, 825–26, 78 L.Ed.2d 629 (1984), where the Court specifically extended the public's right of access to include voir dire examinations of prospective jurors, it spoke of a "presumption of openness" that could be rebutted only by adducing strong, countervailing concerns. The Court added:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

An Alaska state court, in *League of Women Voters v. Adams,* 13 Med.L.Rep. 1433 (Super.Ct.1986), undertook an extensive review of the case law and concluded in its well reasoned opinion, as this Court concludes today, that a qualified right of access to legislative proceedings is an inescapable consequence of first amendment jurisprudence. "With these decisions in mind," the court said, "can it be doubted that public access to legislative meetings would even more directly and forcefully serve the goals of ensuring an informed electorate and improving our system of self-government?" *Id.* at 1442. The court applied the "historical" and "functional" tests enunciated by Justice Brennan in *Globe Newspapers,* finding each satisfied in the same degree by legislative as by judicial proceedings. The historical test was met, according to the court, because Alaska's legislative proceedings had traditionally been open to the public. Then, in applying the functional test, the court discussed the effect of holding open legislative committee meetings:

> It appears to this court that the effect would be salutary and that the benefits would be several. Indeed, virtually all of the advantages of openness which courts have found in regard to judicial proceedings, both criminal and civil, are equally applicable to the legislative process. These include the following:

> a) The integrity of the fact-finding process is enhanced by open proceedings.

> . . . . .

> b) Public respect for the legislative process is increased by open proceedings.

> . . . . .

> c) Open proceedings provide a "therapeutic outlet." ...

> d) The ability of the public to engage in informed discussion of governmental affairs, to cast an informed ballot, and ultimately to improve our system of self-government are all enhanced by open proceedings.

*Id.* (emphasis omitted).

■ In conclusion, then, this Court finds that the existing case law and good sense compel its conclusion that the first amendment mandates that the legislative process be made generally available to the press and to the public. Because the public's is a qualified right of access, however, exceptions may be noted to the general rule, specifically in those instances, e.g., executive sessions, where an interest in confidentiality trumps. But on those occasions where compelling reasons exist for closing meetings to the public—and the law does recognize that there are such occasions— the governmental body in question must make those reasons public. It must make specific findings on the record of the circumstances justifying closure. Under no circumstances may the closure be arbitrary, or may the legislative body assert an unqualified prerogative to close its meetings.

### III

■ With the elements of a first amendment violation thus identified, the conclusion in this case is easily reached. There are, as has been stated, no disputed issues of material fact. The parties agree that the City Council held a meeting on November 18, 1986, that such meeting was closed to the press and to the public, and that no findings were made on the record to justify

the closure. The conclusion is thus inescapable that WJW–TV had a first amendment right to attend the Council meeting, and that this right was denied to it when its reporters and cameramen were refused access. The City does not assert that it had good, even if unrecorded, reasons for denying admittance to the news team. It asserts, rather, that it is under no obligation to produce such reasons, that the decision to hold open or closed Council meetings is its exclusive prerogative. The first amendment tolerates no such arbitrary action. A presumption always operates in favor of open government meetings, which presumption can be overcome only by a formal showing of a need for privacy or confidentiality. Because the City has, by its own admission, made no such showing, and because the remaining elements of a first amendment violation have been found to exist in this case, the Court grants summary judgment to WJW–TV with respect to its first amendment claim.

### IV

This finding of a first amendment violation is sufficient to dispose of this case in its entirety. The Court need not pass on the issues presented by counts two and three of WJW–TV's complaint. The fact that the Ohio Supreme Court, on October 21, 1987, accepted jurisdiction over *Fox v. City of Lakewood*, Case No. 52354, slip op. (Cuy.Cty.App.Ct., June 11, 1987) [available on WESTLAW, 1987 WL 12626], Ohio Supreme Court Case No. 87–1363, moreover, counsels that this Court abstain from deciding the issue posed by count two. A ruling in *Fox*, which concerns the applicability of Ohio's "sunshine law," O.R.C. § 121.22, to charter municipalities, is expected in the near future. It would be improper for this Court to anticipate the resolution, one way or the other, of this issue of state law. While no such barrier prevents this Court from deciding whether the City's action violated its own charter, as WJW–TV claims in count three, this, too, is a pendent state law claim whose determination is not necessary to a resolution of this case.

### V

Having found that no issues of material fact exist in this case and that the City's act of closing its November 18, 1986 Council meeting to the press and to the public violated the first amendment to the United States Constitution, the Court hereby grants summary judgment in favor of WJW–TV. The Court thus grants to WJW–TV the following relief, as demanded in its complaint: 1) A declaratory judgment is hereby entered that the first amendment requires all City Council meetings to be open to the public, except those in respect of which specific findings supporting confidentiality have been made on the record, as explained herein; 2) the City is hereby permanently enjoined from closing any Council meeting, save those excepted above, to the public; 3) the Court shall make an award of reasonable attorneys' fees and costs after counsel for WJW–TV submits a fee petition, due by April 15, 1988, and counsel for the City submits any objections it may have thereto within ten (10) days thereafter.

IT IS SO ORDERED.