**EL DIA, INC., et al., Plaintiffs,**

v.

**Rafael HERNANDEZ COLON, et al., Defendants.**

**Civ. No. 91–1510 (PG).**

United States District Court, D. Puerto Rico.

July 18, 1991.

Daniel R. Domínguez, Hato Rey, P.R., for plaintiffs.

Lino J. Saldaña, Santurce, P.R., and Marcos A. Ramírez, Hato Rey, P.R., for defendants.

OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

On April 22, 1991, plaintiffs, El Día, Inc., a corporation organized under the laws of the Commonwealth of Puerto Rico, which publishes a daily newspaper of general circulation in the Commonwealth of Puerto Rico, and Andrea Martínez, in her dual capacity as a journalist working for El Día, Inc., and as a private citizen, brought a civil action under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, against Rafael Hernández Colón and Héctor Rivera Cruz, in their respective capacities as Governor and

Secretary of Justice of the Commonwealth of Puerto Rico and in their personal capacities, and against the Commonwealth of Puerto Rico, seeking declaratory, temporary and permanent injunctive relief from the enforcement of the Executive Order 91–15 (Boletín Administrativo Núm. OF–1991–15) issued by the Governor of Puerto Rico, Honorable Rafael Hernández Colón, on April 15, 1991.

In their complaint, plaintiffs alleged that the aforementioned executive order is unconstitutional on its face because of certain dispositions it contains which run counter to an alleged constitutional right of access to public records and documents guaranteed to them by the First Amendment to the Constitution of the United States. Plaintiffs further claimed infringement of their due process rights under the Fifth and Fourteenth Amendments.[1]

On April 29, 1991, an order was issued to show cause why the relief requested by plaintiffs should not be granted. A hearing was held on May 3, 1991. At that time this Court stated that this case struck at the core of the First Amendment, that it would not wait for the final outcome of a suit filed in the Superior Court of Puerto Rico, San Juan Part, which claimed violation to the Constitution of the Commonwealth of Puerto Rico exclusively, and instructed the parties to file simultaneous briefs by May 13, 1991.[2] The parties proceeded to comply with the Court's directive as the defendants filed a motion to dismiss and plaintiffs a memorandum on the unconstitutionality of the executive order. Replies to each other's briefs were later filed.

Subsequently, on May 14, 1991, defendants answered the original complaint and averred that plaintiffs did not raise a federal question since "there is no right under the First Amendment of the U.S. Constitution to access to documents in the control of the Commonwealth of Puerto Rico." Defendants further alleged that the claims

against the Commonwealth of Puerto Rico were barred by the Eleventh Amendment to the U.S. Constitution and that the Secretary of Justice, Héctor Rivera Cruz, was not a proper defendant. Defendants filed their answer to the amended complaint on June 24, 1991.

On May 24, 1991, plaintiffs filed a motion requesting summary judgment. This was followed by defendants' "Cross Motion Requesting Summary Judgment," in which defendants proceeded to accept plaintiffs' statements of material facts as well as reporter Andrea Martínez's facts developed in the sworn statement she made and which was annexed to the original complaint. The facts in this case are, therefore, undisputed.

A court shall enter summary judgment forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this case both parties have petitioned summary judgment. For the reasons stated below, we grant summary judgment in favor of plaintiffs and deny summary judgment to defendants. We first address, however, defendants' defenses as to the Commonwealth's immunity from federal suits and as to Héctor Rivera Cruz not being a proper party to this action.

▇ The Eleventh Amendment to the U.S. Constitution bars suits in federal court by citizens of a state against the unconsenting state. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct.

---

**1.** On May 15, 1991, plaintiffs filed an amended complaint and added allegations as to defendants' infringement of a right to gather news and violation of the constitutional guarantee of equal protection of the laws under the Fifth and Fourteenth Amendments.

**2.** The Court accelerated procedures as authorized by Fed.R.Civ.P. 57, which states that "the court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

900, 907, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662–663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). This principle is extensive to Puerto Rico, *Lipsett v. University of Puerto Rico,* 745 F.Supp. 793, 795 (D.P.R.1990). A state's immunity can, nevertheless, be abrogated by Congress. *Dellmuth v. Muth,* 491 U.S. 223, 227–228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989). However, section 1983, under which the present case has been brought, does not abrogate eleventh amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, we hold that the present action cannot be entertained against the Commonwealth of Puerto Rico and, accordingly, dismiss the action as applied to the Commonwealth.

■ Defendants have also contended that the Secretary of Justice is not a proper party to this action. In order for a state officer to be properly brought in a suit under 42 U.S.C. § 1983 such officer must be in some manner responsible for the alleged deprivation of rights. *Dommer v. Crawford,* 653 F.2d 289, 291 (7th Cir.1981). In the complaint plaintiffs only allege that the Secretary of Justice is "the executive officer who represents the Commonwealth of Puerto Rico in all civil or criminal actions against the government." Nowhere have plaintiffs alleged a specific duty or responsibility of such official that in some manner makes such official responsible for the alleged deprivations of plaintiffs' rights. Nor have they presented evidence of the Secretary of Justice's personal participation in any of the deprivations alleged in plaintiffs' claims. *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). We, therefore, hold that Héctor Rivera Cruz is not a proper party to the instant action and, therefore, dismiss the case against him both in his official and personal capacities.

### Standing

■ The Supreme Court has stated that in order for a plaintiff to have standing the court must ensure that the party seeking relief has alleged "such a personal stake in the outcome of the controversy as to assure concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Plaintiffs in this action are a newspaper company and a reporter who filed a sworn statement showing her continuous involvement in the gathering of news from governmental agencies. In *Laird v. Tatum,* 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972), it was held that there is standing when "the challenged exercise of governmental power [is] regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions or compulsions that he [is] challenging." There can be no doubt that plaintiffs are presently and will be prospectively subjected to the executive order since it was put into effect as of April 15, 1991, and the same governs the production of documents in all executive agencies, therefore, effectively regulating and or curtailing the information plaintiffs can gather from governmental sources.

We find, then, that plaintiffs have shown that the executive order effectively deters them in obtaining information from the government, thus, they have a cognizable injury that can be redressed by this Court. Moreover, the fact that plaintiffs have undoubtedly been subjected to the executive order since April 15, 1991, gives them the right to the declaratory relief petitioned. In this sense, "the circumstances show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ Also, in the instant case, plaintiffs have challenged the facial validity of the executive order alleging its overbreadth. In such situation, the Supreme Court has stated in *Freedman v. State of Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965), that "in the area of freedom of expression it is well established

that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative officer, whether or not his conduct could be proscribed by a properly decision statute, and whether or not he applied for a license." In *Strasser v. Doorley*, 432 F.2d 567, 568 (1st Cir.1970), the U.S. Court of Appeals for the First Circuit stated that "an attempt to comply with an ordinance or statute is not a condition precedent to attacking it on its face as an unconstitutional burden on free speech." As for the standing of plaintiff Andrea Martínez de Jesús, in her capacity as a citizen, *Freedman's* expressions quoted above are on point, but suffice it to say that "the interest necessary to support the issuance of a writ compelling access has been found for example, in the citizen's desire to keep a watchful eye on the working of public agencies." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597–598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1958). For the reasons stated above, it is, therefore, concluded that plaintiffs have standing to proceed with the present action.

We now turn to the basic question of law raised in this suit. As stated before, there are no issues of fact in controversy here. Plaintiffs are El Día, Inc., a local daily newspaper, and Andrea Martínez, a citizen who is also a reporter for El Día, Inc. On April 15, 1991, the Governor of Puerto Rico issued an executive order, the avowed purpose of which is to "establish an uniform procedure to regulate the inspection and reproduction of public documents." [3] The Order, however, places several strictures to the obtainment by the public of governmental documents. In the first place, it requires from the party who demands a document to have a "genuine interest" in the same. Public officers are given unfettered discretion to determine who has and who has not a "genuine interest." The executive order requires documents be sought by means of a written request containing names, dates and contents of said documents. Furthermore, the Order provides public officers with a list of reasons for denial of disclosure which is open-ended, thus leaving public officers with unlimited discretion to fashion or construe reasons to deny a person access to public documents other than those specified in the Order. A classic example is the seventh exemption of the order which withdraws from the public domain "a report, memorandum or writing prepared by an employee or public official as part of his/her duties or job for his/her superior...."

The Order also establishes a timetable for the production of a public document by the officials. Initially, it grants public officers 30 working days to inform the person making the request for a public document whether: (1) the requesting person has a "legitimate interest" in the document; (2) the requested document is available for inspection; and/or (3) there are reasons that preclude the divulgation of the information contained in the document. In case the public officer deems the document available for inspection, the delivery of such document will be effectuated during the course of the next 60 days subsequent to the date the petitioner has paid for the search and/or reproduction of the document.

However, if a public officer deems that "extraordinary circumstances" are present, he can delay the 60–day delivery period for a "reasonable time." What constitute "extraordinary circumstances" and "reasonable time" are left for the public officer to decide. Within 20 days after the public officer informs the petitioner the reasons for denying access to a document, the petitioner can appeal to an appellate board also created by the Order which, pursuant to Law No. 170 of August 12, 1988, as amended (Law of Uniform Administrative Proce-

---

**3.** Copy of the order, as translated, is enclosed as Appendix 1 to this opinion. Before the issuance of the executive order, several unsuccessful attempts had been made from 1973 until July 1990 to enact a law regulating the access to executive documents: Senate Bill 494 (1973); Senate Bill 1663 (1976); Senate Bill 25 (1985); House Bill 662 (1986); Senate Bill 201 (1989); Senate Bill 276 (1989); House Bill 1041 (1990). The House Bill of 1990 was sponsored by the Executive. *See* letter of Secretary of Justice of June 29, 1990, Exhibit 9 to plaintiffs' summary judgment motion.

dure), can only review a case on the record below and not *de novo*.[4]

### I. *First Amendment*

#### A. *Right of Access*

█ Plaintiffs have posed a novel issue in this jurisdiction: whether under the U.S. Constitution there exists a qualified first amendment right of access to a state's public documents. The ancillary question which we must also address is whether the Governor's Executive Order 91–15 unconstitutionally burdens such right of access.[5] At the start we are guided by what as the Supreme Court said in *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972) to the effect that "without some protection for seeking out the news, freedom of the press would be eviscerated." In *Pell v. Procunier*, 417 U.S. 817, 832, 94 S.Ct. 2800, 2809, 41 L.Ed.2d 495 (1974), the Supreme Court alluded to the interaction between the press, the public at large and our political system as follows:

> The constitutional guarantee of a free press "assures the maintenance of our political system and our open society" *Time, Inc. v. Hill*, 385 U.S. 374, 389 [87 S.Ct. 534, 543, 17 L.Ed.2d 456] (1967), and secures "the paramount public interest in a free flow of information to the people concerning public officials." *Garrison v. Louisiana*, 379 U.S. 64, 77 [85 S.Ct. 209, 217, 13 L.Ed.2d 125] (1964).

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980), the Supreme Court further stated:

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."

█ From the above language it is clear that the citizens and the press play a crucial role in the preservation of a democratic society. It follows that a restraint imposed on the flow of information, which in turn would inhibit public criticism of public officials, is inconsistent with the First Amendment.[6] *Mills v. Alabama*, 384 U.S. 214, 219, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 276, 84 S.Ct. 710, 723, 11 L.Ed.2d 686 (1964); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). The adoption of the Fourteenth Amendment makes this principle extensive to the states, *New York Times, Inc., supra*, 376 U.S. at 276–277, 84 S.Ct. at 723–724, and cases therein cited.[7] Defendants, however, contend on this matter that the Supreme Court case of *Houchins v. KQED, Inc.*, 438 U.S. 1, 9, 98 S.Ct. 2588, 2593, 57 L.Ed.2d 553 (1978), is controlling. There, the Court stated that "[t]his Court has never intimated a first amendment guarantee of a right of access to all sources of information within governmental control."

Yet, while the Court has refused to recognize an absolute right of access to *all* governmental sources of information, it cannot be inferred that it also precluded the recognition of a right of access to *some* sources of governmental information. Otherwise, the First Amendment's guarantees of expression and free press would be empty pronouncements with no practical mean-

4. There are no provisions under the executive order for the making of a record at the executive agency level prior to the appeal to the quasi judicial agency.

5. The Supreme Court has not as of this date expressed itself as to the existence of a First Amendment right of access to executive documents, *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164 (3rd Cir.1986); *United States v. Beckham*, 789 F.2d 401 (6th Cir.1986).

6. It is important to stress that the executive order in question made its appearance on the scene at a time when extensive media attention

was being heaped on the Governor's frequent Mainland and overseas travels. His reluctance to provide the press with complete information anent his travel expenses prompted the San Juan Star to file suit in the Superior Court, San Juan Part, requesting the court to order the Governor to fully disclose to the press the documents evincing such expenses.

7. In the case of Puerto Rico, were it not extensive under the Fourteenth Amendment, it would be under the Fifth. *Harris v. Rosario*, 446 U.S. 651, 653, 100 S.Ct. 1929, 1930, 64 L.Ed.2d 587 (1980).

ing. *Branzburg v. Hayes, supra.* In this connection, the Supreme Court's latter expressions on the subject made in *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), must be heightened. In *Press–Enterprise, supra,* at 9, 106 S.Ct. at 2740, the Supreme Court stated that "if the particular proceeding in question passes [the] tests of experience and logic, a qualified First Amendment right of public access attaches."

The idea of a qualified right of public access to public documents has been subsequently found in other cases dealing with access to particular documents under government control. *See, In re Search Warrant for Secretarial Area–Gunn,* 855 F.2d 569, 574 (8th Cir.1988); *Seattle Times v. U.S. Dist. Ct. for W.D. of Wash.,* 845 F.2d 1513 (9th Cir.1988); *Application of National Broadcasting Co., Inc. v. Presser,* 828 F.2d 340 (6th Cir.1987); *WJW–TV, Inc. v. City of Cleveland,* 686 F.Supp. 177 (N.D.Ohio 1988), *vacated on other grounds,* 878 F.2d 906 (6th Cir.1989). And, in our First Circuit, the Court of Appeals stated in *Globe Newspaper Co. v. Pokaski,* 868 F.2d 497, 505 (1989), that "after *Richmond Newspapers* a blanket prohibition on the disclosure of records of closed criminal cases … implicates the First Amendment." *See also, In re Globe Newspaper Co.,* 729 F.2d 47, 52 (1st Cir.1984).

In *Press–Enterprise Co., supra,* 478 U.S. at 8–9, 106 S.Ct. at 2740, the Supreme Court qualified the right of access to criminal proceedings to the presence of two factors, namely, that "the process has historically been open to the press and general public" and that "the particular access plays a significant positive role in the functions of the particular process in question."

In discussing the first factor mentioned above we turn to the First Amendment to the U.S. Constitution. It provides in its pertinent part that "Congress … shall make no law … abridging the freedom of speech, or of the press…." U.S. Const. Amend. I. Some courts have construed this clause as merely prohibitory in character. *See* majority opinion in *Capital Cities*

*Media, Inc. v. Chester,* 797 F.2d 1164, 1167 (3rd Cir.1986). Yet, we decline to take that position. Instead, we choose a less restrictive interpretation whereby the role of a citizen within a democratic society is given its due importance.

In this context we wholeheartedly espouse the proposition expressed by Circuit Judges Gibbons, Higginbotahn, Sloviter and Mansmann in the dissenting opinion in *Capital Cities Media, Inc. v. Chester, supra,* at 1184–1185, which states that "the line of reasoning that because the first amendment only limits governmental action it therefore does not create individual rights or impose governmental duties is as illogical as the proposition that because the fourth amendment does not address invasions of privacy it should not be construed to require governmental acknowledgement of privacy rights." *See also WJW–TV, Inc. v. City of Cleveland, supra; Cable News Network, Inc. v. American Broadcasting Co.,* 518 F.Supp. 1238 (N.D.Ga. 1981); *Lewis v. Baxley,* 368 F.Supp. 768 (W.D.Ala.1973); *Sheridan Newspaper, Inc. v. City of Sheridan,* 9 Media.L.Rep. 2393 (Wyo.1983), which accord constitutional access to citizens and the media to documents, procedures and information used by the executive and legislative branches. This principle has been also recognized by state courts, including the Supreme Court of Puerto Rico. *Soto v. Secretario de Justicia,* 112 D.P.R. 477 (1982); *Dávila v. Superintendente de Elecciones,* 82 D.P.R. 264 (1960); *Caledonian–Record Publishing Co. v. Walton,* 18 Media.L.Rep. 1965, 1967 (Vt.1990); *League of Women Voters v. Adams,* 13 Media.L.Rep. 1433 (Alaska 1986).

Citizens' participation in self-government and the equally important role of assuring that governmental affairs are conducted in the open are two of the cornerstones of our democratic form of government. The Supreme Court has recognized that this is so in *Pell v. Procunier, supra,* 417 U.S. at 832, 94 S.Ct. at 2809, when it categorically stated that "the constitutional guarantee of a free press 'assures the maintenance of our political system and an open society'

(citation omitted) and secures the paramount public interest in a free flow of information to the people concerning public officials." (citations omitted). Moreover, in *Nixon v. Warner Communications, Inc., supra*, 435 U.S. at 597–598, 98 S.Ct. at 1312, it was pointed out that "it is clear that the courts of this country recognize a general right to inspect and copy public records and documents. In contrast to the English practice, ... (citation omitted) American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *See also United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

As to the second requirement of the two-pronged test developed in *Press–Enterprise, supra*, it is unquestionable that access to public documents plays "a significant positive role" in the process of self-government. This role has been expressed by the Supreme Court as "a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama, supra*, 384 U.S. at 219, 86 S.Ct. at 1437. In view of the fact that the two factors announced in *Press–Enterprise Co., supra*, permeate the instant case, we, therefore, conclude that there exists a First Amendment constitutional right to access to executive documents qualified only when the state can advance a substantial compelling interest in limiting access. *E.U. v. San Francisco County Democratic Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989); *Quincy Cable T.V., Inc. v. F.C.C.*, 768 F.2d 1434 (D.C.Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986); *Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984).

Once it becomes clear that the First Amendment has a definite and paramount role in preserving the democratic way of life and making public officers accountable to the public, "the ultimate prior restraint by government upon the speech that is the core concern of the clause is ignorance of governmental affairs imposed by nondisclosure." *Capital Cities Media, Inc., supra*, at 1186 (Gibbons, J., dissenting).

### B. *Curtailment of the Right of Access*

▇▇▇▇ It is precisely in the matter of disclosure where the executive order fails dismally. Although purporting to recognize a general right of inspection and reproduction of public documents,[8] certainly the Order does not effectively promote those objectives and does not contemplate "the least restrictive means of promoting its objective." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–607, 102 S.Ct. 2613, 2619–2620, 73 L.Ed.2d 248 (1982); *Globe Newspaper Co. v. Pokaski, supra*, at 506 (1st Cir.1989).

The Order provides that only a legitimate interested party can request a document from a public official but leaves to this same official the decision, at his or her unbridled discretion, of who is a legitimate interested party. The Order also gives unbridled discretion to the public official to use his or her imagination in fashioning reasons for denying access to public documents. Even if those two hurdles are overcome, the officer can still consider that extraordinary circumstances are present so as to delay indefinitely the production phase of the process. Alternatively, this same officer may seek refuge under exemption 7 and preclude access on the basis that the document is a "report, memorandum or writing prepared by an employee or public official as part of his/her superior." Even in the best of circumstances, an une-

---

**8.** The events that preceded the promulgation of the executive order seem to point out to an executive intention to withhold information from the press and public. In this connection, we take judicial notice of the ongoing suit at a state court of another daily newspaper, "the San Juan Star," against the Governor with the purpose of obtaining copies of documents reflecting his travel expenses, Superior Court Civil No. KPE 90–2000. In any case, "the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme...." *Weinberger v. Weisenfeld*, 420 U.S. 636, 648, n. 16, 95 S.Ct. 1225, 1233 n. 16, 43 L.Ed.2d 514 (1975).

ventful disclosure can take up to 102 days to materialize. (See note 9, *infra*). It does not take any great amount of ingenuity to perceive this Order as running afoul of its avowed intention of disclosure. It partakes of a total disregard in choosing the least restrictive means of affecting a constitutional right, as mandated by the Supreme Court in *Globe Newspaper Co., supra,* and by the Court of Appeals for the First Circuit in *Globe v. Pokaski, supra.*[9]

At the same time that the Order parts company with its announced noble spirit in providing for the inspection and reproduction of public documents, it further grants public officials an overbroad delegation of authority to discriminate among potential petitioners of public documents, which ultimately results in a prior restraint. *City of Lakewood v. Plain Dealer Publishing Co,* 486 U.S. 750, 757, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988); *Niemotko v. State of Maryland,* 340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed. 267 (1951). In *Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958), the Supreme Court stated that "[i]t is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of any official—as by requiring a permit or license which may be guaranteed or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." The Order at issue here, in delegating open-endedly to public officials the power to decide as to the reasons for denial of a request for a document and as to who is or is not a legitimately interested person, has instituted a scheme of

censorship not allowed by the First Amendment. For, as stated before, the First Amendment confers at least "some protection for seeking out the news," *Branzburg, supra,* 408 U.S. at 681, 92 S.Ct. at 2656, and a blanket delegation of censorship surely burdens information found in public documents which is protected by the First Amendment. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Globe Newspaper v. Pokaski, supra,* at 505. Similarly, prior restraint principles preclude a scheme such as the one established by the Order which fails to place limits on the time within which the public official must issue its decision as to access. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990); *Freedman v. Maryland, supra,* 380 U.S. at 56–61, 85 S.Ct. at 737–740.

Granting that the Governor may have a legitimate compelling interest in establishing a uniform procedure for the production of public documents, and that it may even have a compelling interest in denying access to some documents, the Order, nevertheless, has placed a blanket restriction on access to virtually all[10] public documents of the Executive Branch of Government. This it cannot do, for as we have previously held, this right of access is protected by the First Amendment and can only be curtailed when there can be advanced a substantial compelling reason to limit said access. *Press–Enterprise Co., supra.* As was stated in *Globe Newspaper Co. v. Pokaski,* no blanket restriction on the disclosure of documents is possible without implicating the First Amendment.

Also, undoubtedly the aforementioned order has a "chilling" effect on plaintiffs' first amendment rights. The requirements of proving a legitimate interest

**9.** Indeed, the lengthy procedure established in the executive order to have access to documents does not show the selection by the Governor of the least restrictive means of promoting the purported objective of production of documents. The executive order grants the public official up to 102 days to produce a document that has been requested. None of the 50 states nor the District of Columbia impose such a long waiting period, thus, demonstrating the feasibility of establishing less burdensome terms.

Justino D. Franklin and Robert E. Bouchard, *Guidebook to the Freedom of Information and Primary Act,* 2nd Ed.1990, Clark Boardmand and Co., New York, New York.

**10.** The Order, however, exempts from its coverage those documents "in whose distribution and disclosure the Agency has an interest and the documents whose distribution and disclosure is a function of the Agency."

in a document and of minutely specifying the contents of the document being requested restrains the exercise of the right to access. So does the protracted procedure established for the final production of the document. *Riley v. National Federation of Blind of N.C.,* 487 U.S. 781, 794, 108 S.Ct. 2667, 2676, 101 L.Ed.2d 669 (1988); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). We have been admonished by the Court of Appeals for the First Circuit that "even a one to two day delay impermissibly burdens the First Amendment," *Globe Newspaper Co. v. Pokaski, supra,* at 507. For the reasons stated above, Executive Order 91–15 violates the first amendment rights of access to public documents of the plaintiffs.

## II. *Due Process—Equal Protection*

■ Even assuming that there is no constitutional first amendment right of access, the executive order imposes unconstitutional burdens on the public's right to obtain information about the operation of the government, and both due process and equal protection rights considerations dictate the unconstitutionality of the executive order. *Belcher v. Mansi,* 569 F.Supp. 379 (D.R.I.1983). Before Executive Order 91–15 was decreed, Article 409 of the Code of Civil Procedure of Puerto Rico, 32 L.P.R.A. § 1781, stated that "every citizen has a right to inspect and take a copy of any public document of Puerto Rico except as otherwise expressly provided by law." [11] Executive Order 91–15 itself purports to "establish a public policy that inspection and reproduction of public documents be allowed...." In practice, however, the Order leaves to public officers total discretion to deny public documents, on the basis of reasons that public officers are at total liberty to fashion, an unrestricted power to decide what persons may have a "legitimate interest" in a given document, and when "extraordinary circumstances" are present that merit the postponement of access.

In *Sherrill v. Knight,* 569 F.2d 124 (D.C.Cir.1977), the White House voluntarily decided to allow press facilities in its premises. On one occasion, a journalist was denied a pass without notice of the factual basis for such denial. In such a situation the Court of Appeals for the District of Columbia concluded that:

White House press facilities having been made publicly available as a source of information for newsmen, the protection afforded newsgathering under the first amendment guarantee of freedom of the press [citations omitted], requires that this access not be denied arbitrarily or for less than compelling reasons [citations omitted]. Not only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information (citations omitted).

*Sherrill,* 569 F.2d at 129–130. In Puerto Rico, the legislature decided, by way of Article 409 of the Code of Civil Procedure, to allow citizens unrestricted access to any public document. The pronouncements made in *Sherrill, supra,* are therefore, applicable to our case.

Although it could be argued that the Governor could assert a compelling governmental interest in trying to establish uniform procedures in all the executive agencies anent the production of public documents, the means he has chosen to do so are unconstitutional. The Order lacks definite standards to guide public officers in such areas as: reasons for denial of access; in defining what constitutes "extraordinary circumstances" to delay the delivery period for 60 days; what constitutes reasonable time as that term is used in the Order; and what criteria are to be applied to determine who is a legitimate interested party, among others. This scheme permits the censorship of the communication of ideas and runs afoul the principle that regulations of

---

**11.** In addition, the Supreme Court of the Commonwealth of Puerto Rico, interpreting the Commonwealth's Constitution in *Soto v. Secre-* *tario,* 112 D.P.R. 477 (1982), recognized a constitutional right of access to public documents.

First Amendment rights must be precisely and narrowly drawn, *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), *reh'g denied*, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 814 (1965). In *Cox, supra*, 379 U.S. at 574, 85 S.Ct. at 486, the Supreme Court stated that:

> there is an equally plain requirement for laws and regulations to be drawn so as to give citizens fair warning as to what is illegal; for regulation of conduct that involves freedom of speech and assembly not to be so broad in scope as to stifle First Amendment freedoms, which 'need breathing space to survive,' *NAACP v. Button*, 371 U.S. 415, 433 [83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ]."

*See also Belcher v. Mansi, supra*, at 384, where the Court stated that "one of the mainstays of this bundle of constitutional norms is the principle that any regulation of First Amendment rights must be precisely and narrowly drawn to vindicate the sovereign's interest."

The executive order, in fact, strips plaintiffs of their statutory and jurisprudential entitlement. The legislature has conferred to all citizens the right of access to public documents and plaintiffs could justifiably rely on continued access to such documents. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Although Article 409 does not by itself establish a procedure to implement the right of access it confers, it created the substantive right. This right was created by the Legislature of Puerto Rico in the exercise of the legislative power vested to it by the Commonwealth of Puerto Rico's Constitution, 1 L.P.R.A. Constitution Art. III, §§ 1, 17. And, now, by executive fiat, the right has effectively been taken away from the citizens. By creating exclusions for less than compelling reasons to a pre-existing right of access created by the Constitution and Legislature of Puerto Rico, the executive order is unconstitutional. *Belcher v. Mansi, supra*, at 384. By means of the executive order, public officials enjoy unfettered discretion to deny access of documents to the citizens. And

yet, the public has not had the opportunity of being heard through the legislative process. Plaintiffs, therefore, were deprived of a substantive right without due process: the legislative process. As stated by the Supreme Court, "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982), *quoting, Bi–Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–446, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). *See also* Nowak, Rotunda and Young, *Constitutional Law* (Third Edition) at 485, wherein the authors state that "[w]hen the legislature passes a Law which affects a general class of persons, those persons have all received procedural due process—the legislative process."

The due process violations that stem from the executive order in this case are further compounded by the fact that the entry access of citizens to the court has been narrowed. Before the Order was enacted a person, on being denied a document, could resort directly to the courts via a mandamus or an injunction action. *Soto v. Secretario*, 112 D.P.R. 477 (1982); *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960). Now, subsequent to the enactment of the executive order an administrative procedure which in effect makes access not meaningful must be pursued. The Supreme Court has stated that "persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). *See also Logan v. Zimmerman Brush Co., supra*, 455 U.S. at 430, 102 S.Ct. at 1154, *quoting, Boddie, Id.*, and *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Given that what is at stake here is access to public documents, an access to courts which takes at its minimum at least 102 days is under all circumstances not appropriate to the nature of the case. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See also* L. Tribe: *American Constitutional Law*, 2nd Ed., 1988 at 757, wherein the author comments on the case of *Pickett v. Brown*,

462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983): "Although on its face the statute did not deny meaningful access to the judicial system, it provides such a narrow avenue of entry that access was in effect being arbitrarily withheld."

Just as in *Sherrill, supra,* plaintiffs' interest in the instant case qualifies as liberty which "may not be denied without due process of law...." *Sherrill,* 569 F.2d. at 130–131. The lack of specificity and clear standards in the Executive Order 91–15, as well as the way in which the Governor chose to deny citizens their acquired right of access, violate plaintiffs' first amendment and due process constitutional protection under the U.S. Constitution.

 Principles of equal protection are also implicated in this case. The executive order allows an agency to deny access based on the specific interest that the person requesting the document may have for such a document. The lack of explicit and meaningful standards governing denial of access to records violates the Equal Protection Clause. Moreover, to allow a public officer to make the determination of who qualifies as a "legitimately interested party" is to institutionalize discrimination in the granting of information. Yet, the "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views...." *Carey v. Brown,* 447 U.S. 455, 463, 100 S.Ct. 2286, 2291, 65 L.Ed.2d 263 (1980). *See also Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972), *quoting, Niemotko v. Maryland,* 340 U.S. 268, 272, 71 S.Ct. 325, 327 (1951); *American Broadcasting Companies, Inc. v. Cuomo,* 570 F.2d 1080, 1082 (2nd Cir.1977); *Sherrill v. Knight, supra; Belcher v. Mansi,* 569 F.Supp. at 385; *Quad–City Community News Service, Inc. v. Jebens,* 334 F.Supp. 8 (S.D.Iowa 1971).

The Court finds that the first amendment violation together with the Due Process Clause and Equal Protection Clause violations, as stated above, are sufficient to dispose of this case on its entirety. Plaintiffs advanced additional valid grounds which we need not consider at this time.

There being no issues of material fact existing in this case and in view of the reasons mentioned above holding that Executive Order 91–15 violates the First, Fifth and Fourteenth Amendments to the Constitution of the United States, the Court hereby GRANTS summary judgment in favor of El Día, Inc., and Andrea Martínez de Jesús.

WHEREFORE, it is hereby ORDERED that:

1. A declaratory judgment is hereby entered holding Executive Order 91–15 as NULL AND VOID on its face for violating the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

2. Plaintiffs' motion requesting summary judgment, dated May 24, 1991, is hereby GRANTED.

3. Defendants' "Cross Motion Requesting Summary Judgment," dated June 6, 1991, is hereby DENIED.

4. Defendants' motion to dismiss, filed on May 13, 1991, is hereby DENIED.

IT IS FURTHER ORDERED that the Honorable Governor of the Commonwealth of Puerto Rico, Rafael Hernández Colón, his agents, assistants, successors, employees, attorneys, and the heads of governmental departments and agencies and their successors, employees, attorneys, and all other persons acting in concert or cooperation with him or them, or at his or their discretion, or at his or their control in the Executive Branch of the Government of the Commonwealth of Puerto Rico are PERMANENTLY ENJOINED from enforcing Executive Order 91–15.

IT IS SO ORDERED.

## APPENDIX

CERTIFIED TRANSLATION:

COMMONWEALTH OF PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Administrative Bulletin No. OE–1991–15

EXECUTIVE ORDER OF THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO

**28**

## TO PROVIDE THE PROCEDURE FOR INSPECTION, SEARCH AND REPRODUCTION OF PUBLIC DOCUMENTS AT THE REQUEST OF INTERESTED PERSONS; TO PROVIDE FOR THE CREATION OF AN APPEALS BOARD AND TO ESTABLISH ADDITIONAL PROVISIONS

WHEREAS: The Constitution of the Commonwealth of Puerto Rico grants to the Governor the necessary faculties and attributes to exercise the Executive Power.

WHEREAS: When the Rules of Evidence of 1979 were promulgated, Article 410 of the Code of Civil Procedures, which established the duty of public officials to issue certified copies of public documents under their custody, was repealed.

WHEREAS: According to Article 409 of the Code of Civil Procedures currently in force, as well as the laws and the jurisprudence of this and other jurisdictions, public officials have the duty to allow that persons who so request inspect and make copies of any public document, except when disclosure of the information therein contained is subject to the limitations hereinbelow set forth.

WHEREAS: The right of access to public documents is limited by factors such as:

(1) The requestor of the documents must have a genuine interest in the same;

(2) The government agency may reasonably regulate the inspection and the right to make copies so that neither its functioning nor the public interest become adversely affected;

(3) The documents are confidential because of provisions of law;

(4) The document is protected by some of the evidentiary privileges;

(5) Disclosing the documents may harm fundamental rights of third parties or the right to privacy and personal life of public officials;

(6) Disclosure of the document constitutes a violation of executive privilege;

(7) The document is a report, memorandum or writing prepared by an employee or public official as part of his/her duties or job for his/her superior or for internal purposes of the department's decisions and acts;

(8) The document is part of the deliberative process in the formulation of public policy; and

(9) Disclosure of the document may jeopardize the life or physical integrity of the public official or another person; the security of the country or affect business transactions or official actions of the State with other governments, in progress at the moment when the request for documents is made.

WHEREAS: This Administration wishes to establish as public policy that inspection and reproduction of public documents be allowed, provided always that the disclosure of the information therein contained is not subject to the aforesaid limitations.

WHEREAS: Sound public administration requires that there exist a uniform procedure to regulate the inspection and reproduction of public documents that establishes a balance between the interests of the requestors and the interests of the State in the adequate exercise of the public business.

NOW, THEREFORE: I, Rafael Hernández–Colón, Governor of the Commonwealth of Puerto Rico, by virtue of the faculties inherent to my position and of the authority that has been granted to me by the Constitution and the laws of the Commonwealth of Puerto Rico, do hereby order all agencies to establish the necessary internal regulations for the search, evaluation, inspection and reproduction of the public documents requested by the interested persons and to establish such reasonable amounts or fees to be collected for said service so that they reflect the expenses for the search and reproduction of the requested documents. To these ends, I provide:

FIRST: The internal rules to be established in each Agency must include, as a minimum, the following:

(1) The highest ranking official of the Agency will receive the petitions for examination or reproduction of public documents; will determine whether the requestor is a person with a legitimate interest in the required documents; will search for, or order a search for, the required documents; will determine whether access to the required documents is limited or not; and will compute, or order the computation of, the costs to be incurred in the search for and reproduction of the documents requested.

(2) The requirement for examination or reproduction of public documents must be made during working hours at the central offices of the Agency, through a written petition wherein the documents required for examination or reproduction are specified or accurately described. The description of the requested documents must contain information as to name, dates and contents of each document required, so that it will reasonably allow the identification and location of the document concerned. General or inaccurate descriptions or generic requirements will not be admitted. In addition, every request for examination or reproduction of public documents must contain the name and address of the person requesting said documents with a description of his/her specific interest in obtaining the same. The written requirement must further specify that the person who requests the reproduction of the public documents is willing to pay for the reasonable costs of search and reproduction of the same; or in its defect, to explain in detail his/her indigent condition that will not allow him/her to make such payment. The Agency must furnish the necessary forms whereon to present the requests. It must also, in cases of alleged indigence, make a determination in that regard, for which it may require from the requestor such information of a financial nature as may be necessary within certain parameters of reasonableness.

(3) Within a term of thirty (30) working days, the requestor will be notified of the determination as to whether or not he/she has a legitimate interest in the examination or reproduction of public documents; whether the documents are available; and whether there exist reasons for which the document or some information therein contained can not be disclosed. The notice of availability will also contain information about the cost of the search for and reproduction of the required documents; or about the determination of alleged indigence in the appropriate cases.

(4) Within the term of forty-five (45) days counted as of the notice of availability of the required documents, the requestor must pay the costs indicated to him/her. Should the requestor fail to pay in full the costs to be incurred in the search for or reproduction of the required documents within the provided term, it will be understood that he/she has voluntarily dismissed his/her requirement. This warning must appear on the notice of availability.

(5) A strict sequence of the pending requirements will be established, taking as a base the date when the requestor pays the costs to be incurred in the search for or reproduction of the documents requested and the requestor will be notified of the approximate date when his/her requirement can be complied with, the delivery of which will be done not later than sixty (60) days after receipt of payment.

(6) If the requested public documents can not be adequately identified through the information furnished by the requestor, then the requestor will be so notified, requiring him/her to specify the requested documents in better detail. Should the information to reasonably identify the requested documents not be received within the term of thirty (30) days counted as of

the request for more specific information, it will be understood that the requestor has voluntarily dismissed the requirement. Such warning must appear in the notice requesting specifics.

(7) If it is determined that there are reasons to prevent the disclosure of the required documents or any part thereof, the requestor will be so notified and be told the reasons for such determination. Should he/she not agree with this determination, the requestor may appeal, within the term of twenty (20) working days counted as of the date of the notice, to the Appeals Board being established in this Executive Order. The decision of the Appeals Board can be appealed in review before the Superior Court pursuant to the provisions of Law No. 170 of 12 August 1988, as amended.

(8) In the event that the nature, the time involved or the quantity of the documents are such that reproducing them or providing a copy to the requestor unreasonably interrupts the Agency's work or the discharge of the public business, it will be required that the requestor provide the means for reproduction of the documents requested. In this case, an adequate place will be provided whereat the reproduction of documents can be accomplished within working hours, without interrupting the Agency's work and in such a manner that the integrity and fidelity of the public archives is safe-guarded, and the requestor will be notified of the date and place where he/she may conduct the inspection and reproduction of the documents.

(9) Each Agency will determine the reasonable costs incurred in the search for and reproduction of the required documents in accordance with the provisions of its organic law or regulations currently in force. Should there be nothing provided in that regard, the reasonable costs to be collected from the requestor will be established on the basis of the provisions of Section 1 of the Law of 12 March 1908, as amended, 3 L.P.R.A. 952. This provision does not prevent each Agency from fixing as fees a reasonable amount that reflects the real expenses of the search for and reproduction of the documents required from the Agency.

(10) When the petition for examination or reproduction involves a matter under consideration by more than one Agency, the highest ranking official of the Agency that receives the petition will evaluate said petition jointly with the highest ranking official of the other Agencies involved. The notice to the requestor about the availability of the documents will have the concurrence of all the Heads of the Agencies involved.

(11) In extraordinary circumstances, such as when a large number of documents is requested or the search for and evaluation of the same takes a substancial amount of time, the terms established in subparagraphs (3) and (5) of this FIRST Paragraph may be extended by the Agency for a reasonable term and it will so notify the requestor.

SECOND: An Appeals Board is created, composed of three (3) members appointed by the Governor of Puerto Rico whose faculties and duties shall be:

(1) To decide within a term of twenty (20) working days the various petitions on appeal that the requestors may file when they are not satisfied with the determination of the Agencies.

(2) Request and obtain from any Agency such personnel, equipment, materials and physical space to comply with the functions hereby charged to it.

THIRD: This Executive Order is not applicable to documents in whose distribution and disclosure the Agency has an interest and the documents whose distribution and disclosure is a function of the Agency.

FOURTH: For the purposes of this Executive Order, the term "Agency" means any board, body, examining board, public corporation, commission, independent office, division, administration,

bureau, department, authority, official, person, entity or any instrumentality of the Executive Power of the Commonwealth of Puerto Rico, to include the Governor's Own Office. As a function of the university's autonomy, it is provided that for the purposes of this Executive Order the term "Agency" does not include the University of Puerto Rico.

FIFTH: This Executive Order is applicable to requests for examination or reproduction presented to the Agencies after the promulgation of this Executive Order. Requests for examination or reproduction presented prior to the promulgation of this Executive Order may be governed by the provisions of this Executive Order if the petitioner so requests.

SIXTH: Because it is a mechanism to facilitate the right to information in harmony with an efficient public endeavor, this Executive Order will be effective from its approval so that the minimum requirements herein established will take effect as an emergency measure in each of the Agencies and a term of no more than sixty (60) days is established for each Agency to establish its necessary rules for compliance with this Executive Order and initiate the process of disclosure and adoption of the same in accordance with the law. It is further provided that each Agency will establish its rules about the cost of the search for and reproduction of the requested documents within a term not to exceed fifteen (15) days as of the approval of this Executive Order.

(Great Seal of the Commonwealth of Puerto Rico)

IN WITNESS WHEREOF, I issue these presents under my signature and cause there be stamped hereon the Great Seal of the Commonwealth of Puerto Rico, in the City of San Juan, on this 15th day of April 1991.

/Sgd/ (Unreadable)
RAFAEL HERNANDEZ COLON
GOVERNOR

Promulgated in accordance with the law on this 15th day of April 1991.

/Sgd/ A.A. Mignucci Giannoni
Arnaldo A. Mignucci Giannoni
Acting Secretary of State

—CERTIFIED—

To be a correct translation prepared by:
/s/Ernesto Quidgley
ERNESTO QUIDGLEY
5-9-91

Certified Court Interpreter by the

Administrative Office of the

United States Courts

(P.L. 95-539, 28 USC 1827)

232 Upsala Street, College Park

Río Piedras, Puerto Rico 00921

(809) 751-8334